GEORGE S. CARDONA
Acting United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
JUDITH A. HEINZ  (No. 176264)
Assistant United States Attorney
Organized Crime & Terrorism Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-7280
     Facsimile:  (213) 894-3713
     E-mail:     judith.heinz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 06-657-CAS |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MOHAMAD ZAKARIA DRAWO |
| v. | |
| MOHAMAD ZAKARIA DRAWO, aka "Zak," | |
| Defendant. | |

1.   This constitutes the plea agreement between Mohamad Zakaria Drawo, aka "Zak," ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

PLEA

2.   Defendant agrees to plead guilty to counts one, two, and

three of the indictment in United States v. Mohamad Zakaria Drawo, CR No. 06-657-CAS.

## NATURE OF THE OFFENSE

3.  In order for defendant to be guilty of count one, which charges a violation of Title 18, United States Code, Section 1546(a)(second paragraph), the following must be true:

First, defendant knowingly had in his control or possession a plate;

Second, the plate was in the likeness of a plate designed for the printing of permits required for entry into the United States; and

Third, defendant's possession of the plate was not under the direction of the Attorney General or the Commissioner of the Immigration and Naturalization Service.

In order for defendant to be guilty of counts two and three, which charge violations of Title 18, United States Code, Section 1015(a), the following must be true:

First, the defendant made a statement;

Second, the statement was made under oath;

Third, the statement was untrue;

Fourth, the defendant knew that the statement was untrue at the time that he made it; and

Fifth, the statement was made in a case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens.

Defendant admits that defendant is, in fact, guilty of these offenses as described in counts one, two, and three of the

indictment.

PENALTIES

4.   The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1546(a) is: 10 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.  The statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 1015(a) is: 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.  Therefore, the total maximum sentence for all offenses to which defendant is pleading guilty is: 20 years imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

5.   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.   Defendant also understands that, by pleading guilty,

3

defendant may be giving up valuable government benefits and valuable civic rights, such as the right to possess a firearm, and, if eligible, the right to vote, the right to hold office, and the right to serve on a jury.

7. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

8. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support pleas of guilty to the charges described in this agreement. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Defendant was born in, and is a citizen of, Syria. He served in the Syrian Army during 1982-1985. Defendant first entered the United States at Los Angeles International Airport on April 28, 1988 on a B-1/B-2 non-immigrant visa. Defendant remained in the United States illegally, and was deportable, after his non-immigrant visa expired on July 27, 1988.

On April 18, 1990, defendant submitted a Form I-690 (Application for Waiver of Ground of Excludability), and a I-687 Form (Application for Status as a Temporary Resident Under

4

Section 245A of the Immigration and Nationality Act) (collectively, an "amnesty" application) to the United States Immigration and Naturalization Service ("INS").[1] On that application, under oath, defendant knowingly made material false statements. Specifically, defendant stated falsely that he had lived in the United States continuously since July 1981, residing at 1907 Deodar, Ontario, California. In truth, as defendant knew, defendant first entered the United States in 1988 (and was therefore ineligible to apply for temporary legal status based on amnesty), and had never lived at the Deodar address. Based on defendant's statements on his amnesty application, INS issued to defendant a temporary resident card, that enabled him to reside and work in the United States legally until May 22, 1993. INS also assigned defendant the immigration file number A077 066 865.

On March 11, 1998, defendant submitted to INS a Form I-485 (Application to Register Permanent Residence or Adjust Status), on which he requested that he be granted permanent residency status based on his marriage to his second wife, a United States citizen. On the Form I-485, defendant stated, under penalty of perjury, that he had never by fraud or willful misrepresentation of a material fact, sought to procure an immigration benefit. In truth, as defendant knew, defendant had made willful misrepresentations of material facts on his amnesty application

---

[1] As of March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and its enforcement and benefits functions were transferred to the Department of Homeland Security (DHS). See Homeland Security Act of 2002, Public Law No. 107-296, 116 Stat 2135. Two agencies within DHS now handle duties that were performed by INS – Citizenship and Immigration Services (CIS), which handles immigration benefits, and Immigration and Customs Enforcement (ICE), which handles immigration enforcement.

to obtain immigration benefits.

On or about July 28, 1998, defendant was cited for providing false information to a peace officer, and on September 16, 1998, he was convicted on that charge, placed on summary probation for two years, and fined $831. On or about December 4, 1998, defendant was cited for violation of lease law, and fighting/noise/offensive words, and on May 20, 1999, he was convicted of fighting/noise/offensive words, and ordered to pay a $110 fine. On May 27, 1999, an INS adjudications officer interviewed defendant, under oath, regarding his permanent residency application. In response to the adjudication officer's questions, defendant knowingly made material false statements, including that he had never been cited for violation of a law and had never made a willful misrepresentation of a material fact to procure an immigration benefit. In truth, as defendant knew, defendant had been cited and convicted for violation of a law, and he had made willful misrepresentations of material facts on his amnesty application and his permanent residency application to obtain immigration benefits. Based on defendant's statements on his permanent residency application and in his interview, INS issued defendant a permanent resident card (a "green" card).

On or about July 14, 1999, the Los Angeles County Sheriff's Department opened an investigation into defendant's alleged felony infliction of injury upon a child, misdemeanor disturbing the peace, and misdemeanor battery. On or about September 27, 1999, a complaint was filed (case no. MWV 054855) charging defendant with misdemeanor battery based on the incident underlying the investigation opened on or about July 14, 1999.

On October 13, 2000, pursuant to a plea agreement, defendant pled guilty in case no. MWV 054855 to misdemeanor disturbing the peace and was sentenced to 36 months summary probation and a $110 fine.

On September 20, 2004, defendant submitted an application for naturalization, which he had signed under penalty of perjury, to the Laguna Niguel, California office of the Department of Homeland Security, United States Citizenship and Immigration Services ("CIS"). On the application, defendant knowingly made material false statements, including that (1) he had never committed a crime for which he had not been arrested, (2) he had never been arrested, cited, charged, convicted, or on probation for violation of the law, and (3) that he had never given false or misleading information to any United States government official while applying for any immigration benefit. On March 18, 2005, an adjudication officer interviewed defendant, under oath, to determine his eligibility for United States citizenship. Defendant signed his naturalization application, which still contained the material false statements, under penalty of perjury, in the officer's presence. During the interview, defendant knowingly testified falsely under oath to the false statements on his naturalization application. Specifically, although defendant knew that he had (1) committed crimes for which he had not been arrested (including making false statements under oath), (2) been arrested, cited, charged, convicted, and on probation for violation of the law, and (3) given false and misleading information to United States government officials on multiple occasions while applying for immigration benefits, defendant falsely denied these actions.

On August 17, 2005, law enforcement officers executed a search warrant at defendant's residence in Claremont, California. During the search, an Immigration and Customs Enforcement (ICE) agent seized a plate in the likeness of a plate designed for the printing of permits required for entry into the United States -- specifically, a wooden-block hand-stamp bearing a plate containing the signature of a former INS district director.  The ICE agent also seized a red ink stamp pad.  The hand-stamp was virtually identical to those used by immigration officials to imprint documents that allow aliens with temporary residence status in the United States to enter the United States from a foreign country.  Defendant's possession of the plate was not under the direction of the Attorney General or the Commissioner of the Immigration and Naturalization Service.  In fact, after waiving his Miranda rights, defendant told the ICE agent that he had obtained the hand-stamp in Tijuana, Mexico from "Jose," to use on a re-entry document so that defendant could travel to Syria and re-enter the United States.  The ICE agent advised defendant that his possession of the hand-stamp was illegal.

On May 3, 2006, in Los Angeles, California, a district adjudications officer re-interviewed defendant, under oath, regarding his eligibility for naturalization.  Defendant's immigration attorney appeared at the interview with defendant. At this interview, the district adjudications officer questioned defendant, under oath, about each of his responses on his naturalization application, and defendant re-affirmed each response.  Defendant dated and initialed his application directly next to each section of questions and answers.  In so doing,

defendant again knowingly made material false statements, including that (1) he had never committed a crime for which he had not been arrested, (2) he had never been arrested, cited, charged, convicted, or on probation for violating the law, and (3) he had never given false or misleading information to United States government officials while applying for immigration benefits. At the conclusion of his naturalization interview, defendant again signed his application for naturalization and knowingly falsely swore that the contents of his application and the testimony he provided were true and correct. In fact, as defendant then knew, he had (1) committed crimes for which he had not been arrested (including making false statements under oath and possessing the wooden hand-stamp), (2) been arrested, cited, charged, convicted, and on probation for violations of the law, and (3) given false and misleading information to United States government officials on multiple occasions while applying for immigration benefits.

                    WAIVER OF CONSTITUTIONAL RIGHTS

9. By pleading guilty, defendant gives up the following rights:

          a) The right to persist in a plea of not guilty.

          b) The right to a speedy and public trial by jury.

          c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot

afford counsel - at every other stage of the proceedings.)

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>SENTENCING FACTORS</u>

10. Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

11. Except as set forth in paragraphs 12 and 16(c) below, defendant and the USAO have no agreement as to the appropriate

sentence or the applicable sentencing guideline factors.  Except as set forth in paragraphs 12 and 16(c) below, both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

12.  Defendant and the USAO agree to recommend and request that the Court set November 12, 2007 as the date for sentencing in this case to afford defendant additional time to put his affairs in order.  Defendant and the USAO agree further that should defendant be unable to put his affairs in order by November 12, 2007, defendant may request a one-time continuance of the sentencing date, which shall be granted only upon a showing of good cause based on defendant's production of reliable evidence.  The parties agree that such a continuance will not, under any circumstances, exceed February 11, 2008, and that neither party will seek to continue sentencing in this case beyond that date.  Defendant agrees that, should the Court impose a sentence of imprisonment, defendant will self-surrender to the United States Marshals Service immediately upon pronouncement of sentence.  Defendant also agrees that, should the Court not impose a sentence that includes a period of imprisonment, defendant will report to ICE for deportation immediately upon pronouncement of sentence.

13.  The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and

the Court, and (b) correct any and all factual misstatements relating to the calculation of the sentence.

### DEFENDANT'S OBLIGATIONS

14. Defendant agrees that he or she will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all terms and conditions contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under USSG § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay.

15. Defendant further agrees that he is deportable under the immigration laws of the United States and waives the right to notice and a hearing prior to deportation. Defendant further agrees pursuant to Title 8, United States Code, Section 1228(c)(5) to enter into and agree to the stipulation and proposed order set forth in Exhibit A attached hereto, or a substantially similar stipulation and proposed order, seeking a judicial order of removal from the United States.

//

12

THE USAO'S OBLIGATIONS

16. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all terms and conditions contained in this agreement.

b) At the time of sentencing to move to dismiss the remaining count of the indictment (count four). Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed count in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

c) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to USSG § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

BREACH OF AGREEMENT

17. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the

13

Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty pleas, and the USAO will be relieved of all of its obligations under this agreement.

18.  Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

c) Defendant agrees that: i) any statements made by defendant, under oath, at the guilty plea hearing; ii) the stipulated factual basis statement in this agreement; and iii) any evidence derived from such statements, are admissible against defendant in any future prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19.  Defendant gives up the right to appeal any sentence

14

imposed by the Court, and the manner in which the sentence is determined, provided that the sentence is within the statutory maximum specified above and is constitutional. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

20. The USAO gives up its right to appeal the sentence, provided that the Court in determining the applicable guideline range does not depart downward in offense level or criminal history category.

### COURT NOT A PARTY

21. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

### NO ADDITIONAL AGREEMENTS

22. Except as set forth herein, there are no promises,

understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

23. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEORGE S. CARDONA
Acting United States Attorney


_____            <u>May 21, 2007</u>
JUDITH A. HEINZ                          Date
Assistant United States Attorney
Organized Crime & Terrorism Section


This agreement has been read to me in Arabic, the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or

//

forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

M-Z-DRAWO                                         5-21-07
MOHAMAD ZAKARIA DRAWO                             Date
Defendant

I, _Hisham MALEK_, am fluent in written and spoken English and Arabic languages. I accurately translated this entire agreement from English into Arabic to defendant Mohamad Zakaria Drawo on this date.

_____              21 May 2007
[INTERPRETER'S NAME]                          Date
Interpreter

I am Mohamad Zakaria Drawo's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____              21 May 2007
RAUL AYALA                                    Date
Counsel for Defendant
Mohamad Zakaria Drawo

17

GEORGE S. CARDONA
Acting United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
JUDITH A. HEINZ   (No. 176264)
Assistant United States Attorney
Organized Crime & Terrorism Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:   (213) 894-7280
      Facsimile:   (213) 894-3713
      E-mail:      judith.heinz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR No. 06-657-CAS |
| ) | |
| Plaintiff, ) | STIPULATED REQUEST FOR JUDICIAL REMOVAL OF MOHAMAD ZAKARIA DRAWO |
| ) | |
| v. ) | |
| ) | |
| MOHAMAD ZAKARIA DRAWO, ) | |
| aka "Zak," (A77 066 865) ) | |
| ) | |
| Defendant. ) | |
| ) | |

Defendant Mohamad Zakaria Drawo, aka "Zak," ("defendant") and plaintiff United States of America hereby agree and stipulate pursuant to Title 8, United States Code, Section 1228(c)(5), to the following:

1.   Defendant waives the right to notice and a hearing before an immigration judge prior to removal from the United States.

2.   Defendant's right to a judicial removal proceeding has

EXHIBIT A

been fully explained to him by his attorney and defendant understands and acknowledges that he is waiving his right to examine the evidence against him that establishes that he is removable from the United States and present any evidence on his own behalf that establishes he is not subject to removal from the United States.

3.   The Court should enter a judicial order that defendant be removed from the United States.

4.   The facts in support of this request are as follows:

a.   Defendant is not a citizen or national of the United States.

b.   Defendant is a native and citizen of Syria.

c.   Defendant entered the United States at or near Los Angeles, California on April 28, 1988, pursuant to a B-1/B-2 non-immigrant visa, with authorization to remain in the United States for a limited period of time not to exceed July 27, 1988. Defendant remained in the United States illegally after July 27, 1988, at which time he became subject to removal.

d.   On April 18, 1990, defendant submitted a Form I-690 (Application for Waiver of Ground of Excludability), and a I-687 Form (Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act) (collectively, an "amnesty" application) to the United States Immigration and Naturalization Service ("INS").[1]  On that application, under oath, defendant knowingly made material false

---

[1] As of March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and its enforcement and benefits functions were transferred to the Department of Homeland Security (DHS).  See Homeland Security Act of 2002, Public Law No. 107-296, 116 Stat 2135.

2

statements. Specifically, defendant stated falsely that he had lived in the United States continuously since July 1981, residing at 1907 Deodar, Ontario, CA. In truth, as defendant knew, defendant had not lived in the United States continuously since July 1981, but instead first entered the United States on April 28, 1988. In addition, as defendant knew, defendant had never lived at the Deodar address. Defendant was ineligible for temporary legal status based on amnesty. However, due to defendant's false statements on his amnesty application, INS accorded defendant temporary resident status valid until May 22, 1993.

e. On March 11, 1998, defendant submitted to INS a Form I-485 (Application to Register Permanent Residence or Adjust Status), on which he requested that he be granted permanent residency status based on his marriage to his second wife, a United States citizen. On the Form I-485, defendant stated, under penalty of perjury, that he had never, by fraud or willful misrepresentation of a material fact, sought to procure an immigration benefit. In truth, as defendant knew, defendant had made willful misrepresentations of material facts on his amnesty application to obtain immigration benefits.

f. On or about July 28, 1998, defendant was cited for providing false information to a peace officer, and on September 16, 1998, he was convicted on that charge, placed on summary probation for two years, and fined $831. On or about December 4, 1998, defendant was cited for violation of lease law, and fighting/noise/offensive words, and on May 20, 1999, he was convicted of fighting/noise/offensive words, and ordered to pay a

3

$110 fine.

g.    On May 27, 1999, an INS adjudications officer interviewed defendant, under oath, regarding his permanent residency application.  In response to the adjudication officer's questions, defendant knowingly made material false statements, including that he had never been cited for violation of a law and had never made a willful misrepresentation of a material fact to procure an immigration benefit.  In truth, as defendant knew, defendant had been cited and convicted for violation of a law, and he had made willful misrepresentations of material facts on his amnesty application and his permanent residency application to obtain immigration benefits.

h.    On September 18, 1999, defendant and his second wife formally separated (as they both reported on their joint divorce petition).  Neither defendant or his second wife reported this fact to INS.  This fact was material to INS's consideration of defendant's Form I-485 (Application to Register Permanent Residence or Adjust Status) (on which he requested that he be granted permanent residency status based on his marriage to his second wife).

i.    On December 15, 1999, INS accorded defendant permanent residency status, based on defendant's statements on his permanent residency application and in his interview, and based upon defendant's failure to notify INS that he and his second wife had separated.

j.    Defendant is removable from the United States pursuant to the following provisions of law:

(1)    8 U.S.C. § 1227(a)(1)(A) as an alien who at

4

the time of entry or adjustment of status was within one or more classes of aliens inadmissible by the law existing at such time, to wit, an alien inadmissable under 8 U.S.C. § 1182(a)(6)(C)(i) for fraud or willfully misrepresenting a material fact in seeking to procure a visa, other documentation, or admission into the United States, or other benefit under the Immigration and Nationality Act; and

(2) 8 U.S.C. § 1227(a)(2)(E)(3)(B)(iii) as an alien who at any time has been convicted of a violation of, or an attempt or conspiracy to violate, Title 18, United States Code, Section 1546(a) (relating to fraud and misuse of visas, permits, and other entry documents).

k. Defendant waives any right to seek and apply for amnesty pursuant to 8 U.S.C. § 1158, or withholding from removal pursuant to 8 U.S.C. § 1231(b)(3), or protection under the Convention Against Torture pursuant to 8 C.F.R. § 1208.16-18.

l. Defendant is entering into this stipulation as a condition of his plea agreement. In that plea agreement, defendant agreed (1) to plead guilty to count one of the indictment, which charges defendant with unauthorized possession of a plate in the likeness of a plate designed for the printing of permits required for entry into the United States, in violation of Title 18, United States Code, Section 1546(a); (2) to plead guilty to counts two and three of the indictment, which charge defendant with making false statements under oath in a matter relating to naturalization, in violation of Title 18, United States Code, Section 1015(a); and (3) to entry of a judicial order of removal.

5

5.  Accordingly, defendant and the United States jointly request that the Court, after imposing sentence, order that defendant be removed from the United States so that promptly upon defendant's satisfaction of his sentence, United States Immigration and Customs Enforcement may execute the order of removal according to the applicable laws and regulations.

SO STIPULATED.

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEORGE S. CARDONA
Acting United States Attorney


_____          _____
JUDITH A. HEINZ                          Date
Assistant United States Attorney
Organized Crime & Terrorism Section


This agreement has been read to me in Arabic, the language I understand best, and I have carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.


_____          _____
MOHAMAD ZAKARIA DRAWO                     Date
Defendant


6

I, _____, am fluent in written and spoken English and Arabic languages.  I accurately translated this entire agreement from English into Arabic to defendant Mohamad Zakaria Drawo on this date.


_____          _____
[INTERPRETER'S NAME]                       Date
Interpreter


I am Mohamad Zakaria Drawo's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


_____          _____
RAUL AYALA                                 Date
Counsel for Defendant
Mohamad Zakaria Drawo

7